Michael Crosner, Esq. (State Bar No. 41299)
mike@crosnerlegal.com
Zachary Crosner, Esq. (State Bar No. 272295)
zach@crosnerlegal.com
Blake Jones, Esq. (State Bar No. 211221)
blake@crosnerlegal.com
Chad Saunders, Esq. (State Bar No. 257810)
**CROSNER LEGAL, PC**
9440 Santa Monica Blvd. Suite 301
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429

Michael R. Reese (State Bar No. 206773)
mreese@reesellp.com
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

George V. Granade (State Bar No. 316050)
ggranade@reesellp.com
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile: (212) 253-4272

Attorneys for Plaintiff BENJAMIN ADLER
and the Proposed Class

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN ADLER, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALTSLEEP, LLC, a Florida Limited Liability Company,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, BENJAMIN ADLER ("PLAINTIFF"), as an individual and on behalf of all others similarly situated (the "Class," as defined below), hereby files this Complaint against Defendant ALTSLEEP, LLC, a Florida Limited Liability Company ("DEFENDANT"). PLAINTIFF is informed and believes and thereon alleges as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to PLAINTIFF's claims occurred in this District. PLAINTIFF purchased one or more of the sleep-aids at issue in this District, and DEFENDANT has deliberately marketed, advertised, and sold the sleep-aids within this District.

## SUMMARY OF THE ACTION

3. This is a proposed class action on behalf of a "Nationwide Class," a "California Class," and a "Multi-State Class" (all defined below) of individuals who purchased DEFENDANT's sleep-aid products labeled as "natural" ("Products," as defined below). DEFENDANT falsely and misleadingly represents that the Products are "natural," when, in fact, they contain non-natural ingredients. This lawsuit seeks to enjoin DEFENDANT's false and misleading practices and recover damages and restitution on behalf of the class under applicable state laws.

4. DEFENDANT manufactures, markets, and sells "natural" sleep-aid products. DEFENDANT professes that its Product is a "Natural dietary supplement

to promote restful sleep so you wake up feeling refreshed."[1]

5.    DEFENDANT's sleep aid products are deceptively labeled as "natural," despite containing non-natural ingredients. The following products all contain multiple synthetic and/or highly processed ingredients (collectively, the "Products"):

-    Alteril Natural Sleep Aid

-    Alteril Fast Acting Softgels Natural Sleep Aid

-    The Natural Choice Alteril PM with Turmeric Natural Sleep Aid

6.    The word "natural" is prominently displayed on the front label of each and every Product's packaging.

7.    To the detriment of the consumer, the Products are not, in fact, "natural." All of the Products contain at least one or more of the following non-natural ingredients: Hypromellose; Polyethylene Glycol; Polyvinyl Alcohol; Colloidal Silicon Dioxide; FD&C Yellow #5; Magnesium Stearate; Maltodextrin; Microcrystalline Cellulose; and/or Silicon Dioxide.

8.    As guidance with respect to what a reasonable consumer may think is "natural," the United States Department of Agriculture ("USDA") in the United States Code of Federal Regulations ("US CFR"), 7 C.F.R. § 205.605(b), specifically classifies the following ingredients as synthetic substances: Silicon dioxide; Magnesium Stearate; and Microcrystalline Cellulose.

9.    To label the Products as "natural" creates consumer deception and confusion. A reasonable consumer purchases the Products believing they are "natural" based on the Products' labeling. However, a reasonable consumer would not deem the Products "natural" if the consumer knew that the ingredients contained in the Products are synthetic, highly processed, and/or non-natural.

10.    DEFENDANT's misrepresentations about the Products were uniform and were communicated to PLAINTIFF, and every other member of the Classes, at

---

[1] https://alteril.com/products/alteril-sleep-aid-30ct-tablets?variant=37674636411050. Last visited on August 15, 2022.

1  every point of purchase and consumption.

2  **THE PARTIES**

3      11.    PLAINTIFF resides in the State of New York, in the County of New

4  York.

5      12.    In early April 2022, PLAINTIFF purchased one or more of

6  DEFENDANT's Products including but not limited to Alteril Natural Sleep Aid from

7  Rite Aid in Los Angeles, California.

8      13.    PLAINTIFF saw and relied upon the labeling of the Product, including

9  the prominent "natural" representation, in deciding to purchase the Product.

10  PLAINTIFF purchased the Product because he believed it was a natural sleep aid.

11      14.    PLAINTIFF believes that natural products do not contain synthetic,

12  highly processed, and/or non-natural ingredients.

13      15.    PLAINTIFF would not have spent money and purchased

14  DEFENDANT's Products, or would have paid less for the Products, had he known

15  that they were not natural.

16      16.    The Products that PLAINTIFF received were worth less than the

17  Products for which he paid. PLAINTIFF was injured in fact and lost money as a result

18  of DEFENDANT's improper conduct.

19      17.    However, if PLAINTIFF knew the Products were in fact "natural" as

20  DEFENDANT represents them to be, PLAINTIFF would continue purchasing the

21  Products in the future. At present, PLAINTIFF cannot be confident that the labeling

22  of the Products is, and will be, truthful and non-misleading.

23      18.    Defendant ALTSLEEP, LLC is a Florida limited liability company that

24  manufactures, markets, and sells sleep aid supplements.

25

26

27

28

## SUBSTANTIVE ALLEGATIONS

**A.    DEFENDANT deliberately deceives consumers by falsely labeling the Products as "Natural."**

19.    Each year consumers purchase billions of dollars' worth of "natural" products. In 2020, the U.S. natural and organic products industry grew to reach $259 billion across all sales channels.[2] By 2023, the natural and organic products industry is set to surpass $300 billion.[3] Given this strong demand for "natural" products, it is not surprising that DEFENDANT would label the Products as "natural."

20.    DEFENDANT is a producer and marketer of sleep aid supplement products that are marketed as natural sleep aid supplements to improve sleep.

21.    Each and every one of DEFENDANT's Products prominently professes that it is "natural" on the front label. Images of the Products' labels are below:

 

---

[2] https://www.newhope.com/market-data-and-analysis/20-takeaways-state-us-natural-and-organic-industry-natural-products-expo. Last visited on August 15, 2022.
[3] *Id.*

**B.    DEFENDANT's intent to falsely persuade consumers that the Products are natural is confirmed by DEFENDANT's website and DEFENDANT's social media presence.**

22.    DEFENDANT's website represents that the Products are "natural." These representations include but are not limited to the following:

- "Natural dietary supplement to promote restful sleep so you wake up feeling refreshed."[4]

- "Natural sleep aid with power of curcumin that alleviates aches and soreness that may keep you awake!"[5]

23.    DEFENDANT's Instagram account describes Alteril as the "#1 All Natural Sleep Aid in America."[6]

24.    DEFENDANT's Twitter account likewise represents that "Alteril is an

---

[4] https://alteril.com/products/alteril-sleep-aid-30ct-tablets?variant=37674636411050. Last visited on August 15, 2022.
[5] https://alteril.com/products/24-count-natural-sleep-aid-w-pain-relief. Last visited on August 15, 2022.
[6] https://www.instagram.com/alterilsleep/?hl=en. Last visited on August 15, 2022.

1  all-natural sleeping aid."[7]

2  25.   Thus, DEFENDANT's marketing, website, and social medial presence

3  confirm its intent to create consumer belief that the Products are "natural."

4  **C.   The Products are not natural because they contain synthetic, highly**

5  **processed, and/or non-natural ingredients, and a reasonable**

6  **consumer would not deem the Products to be "natural."**

7  26.   Despite DEFENDANT's labels and its representation regarding the

8  "natural" quality of the Products, the truth is that the Products are not "natural."

9  DEFENDANT uses multiple ingredients in its Products that do not meet the USDA

10  and/or its own definition of "natural," and a reasonable consumer would not deem the

11  Products natural. These ingredients include but are not limited to the following:

12              -    Coating (made of a combination of two or more of the following

13                   ingredients: Hypromellose, Polyethylene Glycol, and Polyvinyl

14                   Alcohol)

15              -    Colloidal Silicon Dioxide

16              -    FD&C Yellow #5

17              -    Magnesium Stearate

18              -    Maltodextrin

19              -    Microcrystalline Cellulose

20              -    Silicon Dioxide

21  27.   Using the USDA standards as guidance, reasonable consumers would

22  not deem any of the Products containing these ingredients as "natural."

23  28.   Coating – The coating used in DEFENDANT's Products contains

24  several synthetic ingredients, including:

25              -    Hypromellose – Also known as hydroxypropyl methylcellulose,

26

27

28  [7] https://mobile.twitter.com/alterilpills. Last visited on August 15, 2022.

hypromellose is a semi-synthetic form of cellulose.[8] This ingredient is found in the coating of DEFENDANT's Alteril Natural Sleep Aid and The Natural Choice Alteril PM with Turmeric Natural Sleep Aid.

- <u>Polyethylene Glycol</u> – A synthetic material with many applications and clinical uses.[9] This ingredient is found in the coating of DEFENDANT's Alteril Natural Sleep Aid.

- <u>Polyvinyl Alcohol</u> – A synthetic polymer made by the polymerization of vinyl acetate and hydrolysis of the ester.[10] This ingredient is found in the coating of DEFENDANT's Alteril Natural Sleep Aid.

29.    <u>Colloidal Silicon Dioxide</u> – In the pharmaceutical industry, silicon dioxide is also known as colloidal silicon dioxide.[11] Silicon dioxide is listed as a synthetic ingredient under 7 C.F.R § 205.605. According to 7 U.S.C. § 6502(21), "synthetic" means "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources." This ingredient is found in DEFENDANT's Alteril Natural Sleep Aid.

30.    <u>FD&C Yellow #5</u> – A synthetic dye made from petroleum.[12] This ingredient is found in DEFENDANT's Alteril Fast Acting Softgels Natural Sleep Aid.

---

[8] https://www.ewg.org/skindeep/ingredients/703077-HYDROXYPROPYL_METHYLCELLULOSE.

[9] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5514851/#:~:text=Polyethylene%20glycol%20(PEG)%20is%20a,et%20al.%2C%202015).

[10] https://pubchem.ncbi.nlm.nih.gov/compound/Polyvinyl-alcohol#section=Food-Additive-Definition.

[11] https://www.drugs.com/inactive/silicon-dioxide-170.html#:~:text=In%20the%20pharmaceutical%20industry%2C%20silicon,appear%20to%20be%20biologically%20inert.

[12] https://www.ewg.org/skindeep/ingredients/702442-FDC_YELLOW_5/.

31.  <u>Magnesium Stearate</u> – A magnesium salt that is listed as a synthetic ingredient under 7 C.F.R § 205.605. This ingredient is found in DEFENDANT's Alteril Natural Sleep Aid and The Natural Choice Alteril PM with Turmeric Natural Sleep Aid.

32.  <u>Maltodextrin</u> – An artificial substance produced by the process of hydrolysis of otherwise natural starches (mostly wheat, corn, and rice). It is a highly processed product.[13] This ingredient is found in DEFENDANT's Alteril Natural Sleep Aid, Alteril Fast Acting Softgels Natural Sleep Aid, and The Natural Choice Alteril PM with Turmeric Natural Sleep Aid.

33.  <u>Microcrystalline Cellulose</u> – A crystalline portion of cellulose.[14] Cellulose is listed as a synthetic ingredient under 7 C.F.R § 205.605. Microcrystalline cellulose is listed as a prohibited synthetic under 7 C.F.R § 205.605. This ingredient is found in DEFENDANT's The Natural Choice Alteril PM with Turmeric Natural Sleep Aid.

34.  <u>Silicon dioxide</u> – An ingredient listed as synthetic under 7 C.F.R § 205.605. This ingredient is found in DEFENDANT's Alteril Natural Sleep Aid, Alteril Fast Acting Softgels Natural Sleep Aid, and The Natural Choice Alteril PM with Turmeric Natural Sleep Aid.

35.  Accordingly, a reasonable consumer would not deem the Products to be "natural."

36.  Thus, by labeling the Products as "natural," DEFENDANT deceives and misleads reasonable consumers.

---

[13] https://www.healthline.com/health/food-nutrition/is-maltodextrin-bad-for-me#TOC_TITLE_HDR_1.
[14] https://www.ewg.org/skindeep/ingredients/703956-MICROCRYSTALLINE_CELLULOSE/.

**D.   Reasonable consumers purchase the Products because they have been deceived to believe they are "natural."**

37.   DEFENDANT's labeling of the Products as "natural" unequivocally demonstrates its intent to persuade consumers that the Products are "natural" because they contain only natural ingredients. As discussed above, however, the Products contain numerous synthetic ingredients. The Products contain ingredients that are the result of complex, multi-step processes that involve or result in synthetic chemicals. The resulting ingredients are substances that do not exist in nature and which would not exist without complex chemical processes.

38.   Despite the inclusion of synthetic and highly processed substances, DEFENDANT labels and markets the Products as "natural."

39.   Reasonable consumers, including PLAINTIFF, purchased the Products based upon their belief that they are "natural." However, a reasonable consumer would not deem the Products "natural" if the consumer knew that they contained synthetic, highly processed, and/or non-natural ingredients.

40.   As such, DEFENDANT's claims that the Products are "natural" are false and misleading.

41.   As an immediate, direct, and proximate result of DEFENDANT's false, misleading, and deceptive "natural" representations, DEFENDANT injured PLAINTIFF and the Class members in that they:

-   paid a sum of money for Products that were not what DEFENDANT represented;

-   paid a premium price for Products that were not what DEFENDANT represented;

-   were deprived of the benefit of the bargain because the Products they purchased were different from what DEFENDANT warranted;

-   were deprived of the benefit of the bargain because the Products

they purchased had less value than what DEFENDANT represented;

- did not receive Products that measured up to their expectations, which DEFENDANT created;

- ingested a substance that was of a different quality than what DEFENDANT promised; and

- were denied the benefit of the beneficial properties of the natural products DEFENDANT promised.

42. Had DEFENDANT not made the false, misleading, and deceptive "natural" representations, PLAINTIFF and the Class members would not have been willing to pay the same amount for the Products they purchased, and, consequently, PLAINTIFF and the Class members would not have been willing to purchase the Products.

43. Based on DEFENDANT's misleading and deceptive representations, DEFENDANT was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Natural" label.

44. DEFENDANT has profited enormously from its false and misleading marketing of the Products. Consumers either would not have purchased the Products had they known they were not "natural" or they would have purchased a less expensive product. For example, DEFENDANT currently sells its Alteril Natural Sleep Aid 30-count bottle for $13.49. Consumers can purchase similar sleep aid supplements for much less, including but not limited to Kirkland's Sleep Aid supplement at $2.99 per 96-tablet bottle.

1

## **CLASS ALLEGATIONS**

2    45.    PLAINTIFF brings this action as a class action pursuant to Federal Rule

3    of Civil Procedure 23. PLAINTIFF seeks to represent the following classes

4    (collectively, the "Class" or the "Classes"):

5    A.    The "Nationwide Class," which consists of: All consumers within

6    the United States who purchased the Products during the

7    applicable liability period for their personal use, rather than for

8    resale or distribution. Excluded from the Nationwide Class are

9    DEFENDANT's current or former officers, directors, and

10    employees; counsel for PLAINTIFF and DEFENDANT; and the

11    judicial officer to whom this lawsuit is assigned.

12    B.    The "California Class," which consists of: All consumers within

13    the State of California who purchased the Products during the

14    applicable liability period for their personal use, rather than for

15    resale or distribution. Excluded from the California Class are

16    DEFENDANT's current or former officers, directors, and

17    employees; counsel for PLAINTIFF and DEFENDANT; and the

18    judicial officer to whom this lawsuit is assigned.

19    C.    The "Multi-State Class" which consists of: All consumers in

20    Alaska, Arizona, Arkansas, California, Colorado, Connecticut,

21    Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois,

22    Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota,

23    Mississippi, Missouri, Montana, Nebraska, Nevada, New

24    Hampshire, New Jersey, New Mexico, New York, North Carolina,

25    North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode

26    Island, South Carolina, South Dakota, Tennessee, Texas, Utah,

27    Vermont, Virginia, Washington, West Virginia, or Wyoming who

28    purchased the Products during the applicable liability period for

their personal use, rather than for resale or distribution. Excluded from the Multi-State Class are DEFENDANT's current or former officers, directors, and employees; counsel for PLAINTIFF and DEFENDANT; and the judicial officer to whom this lawsuit is assigned.

46.     The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

   A.   Numerosity: The members of each Class are so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown to PLAINTIFF, based on DEFENDANT's volume of sales, PLAINTIFF estimates the Classes consist of thousands of individual members.

   B.   Commonality and Predominance: There are questions of law and fact that are common to members of the Classes and that predominate over individual questions. These include the following:

      i.     Whether DEFENDANT materially misrepresented to members of the Classes that the Products are "natural";

      ii.    Whether DEFENDANT's misrepresentations and omissions were material to reasonable consumers;

      iii.   Whether DEFENDANT's labeling, marketing, and sale of the Products constitutes an unfair, unlawful, or fraudulent business practice;

      iv.    Whether DEFENDANT's labeling, marketing, and sale of the Products constitutes false advertising;

      v.     Whether DEFENDANT's conduct described above constitutes a breach of warranty;

      vi.    Whether DEFENDANT's conduct injured consumers and,

if so, the extent of the injury; and

vii.    The appropriate remedies for DEFENDANT's conduct.

C.    Typicality: PLAINTIFF's claims are typical of the claims of the members of the Classes because PLAINTIFF suffered the same injury as other members of the Classes – *i.e.*, PLAINTIFF purchased the Products based on DEFENDANT's misleading representations that the Products are "natural."

D.    Adequacy: PLAINTIFF will fairly and adequately represent and protect the interests of the members of the Classes. PLAINTIFF does not have any interests that are adverse to those of the Classes' members. PLAINTIFF has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

E.    Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

F.    Federal Rule of Civil Procedure 23(b)(2): The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because

DEFENDANT acted or refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive or equitable relief with respect to each Class as a whole.

47.   Notice: PLAINTIFF and his counsel anticipate that notice to the proposed Class will be effectuated through recognized, Court-approved notice dissemination methods, which may include United States mail, electronic mail, Internet postings, and/or published notice.

## FIRST CAUSE OF ACTION

### Violation of the Magnuson-Moss Warranty Act

### 15 U.S.C § 2301 *et seq.*

### (Brought on Behalf of Plaintiff and the Nationwide Class)

48.   PLAINTIFF realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

49.   PLAINTIFF brings this claim individually and on behalf of the other members of the Nationwide Class for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

50.   The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act.

51.   The Products are consumer products within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

52.   PLAINTIFF and the other Nationwide Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

53.   DEFENDANT is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4) and (5).

54.   DEFENDANT's written statements that the Products are "natural," as alleged herein, are statements made in connection with the sale of the Products that

relate to the nature of the Products and affirm and promise that the Products are defect free, *i.e.*, not incorporating unnatural ingredients, but rather incorporating only natural ingredients, and as such are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

55.    As alleged herein, DEFENDANT has breached this written warranty by selling consumers the Products that, in fact, are not "natural" as warranted and thus do not conform to DEFENDANT's written warranty, violating the Magnuson-Moss Warranty Act and causing PLAINTIFF and the other members of the Classes injury and damage in an amount to be proven at trial.

56.    Additionally or alternatively, as alleged herein, DEFENDANT has violated state warranty laws and thereby has also violated the Magnuson-Moss Warranty Act, causing PLAINTIFF and other members of the Classes injury and damage in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Violation of the California Consumers Legal Remedies Act
### (Brought on Behalf of Plaintiff and the California Class)

57.    PLAINTIFF realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

58.    PLAINTIFF brings this action on behalf of the California Class pursuant to California's Consumers Legal Remedies Act ("CLRA"), codified at California Civil Code section 1750 *et seq.*

59.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

60.    The Products are "goods," as defined by the CLRA in California Civil Code section 1761(a).

61.    DEFENDANT is a "person," as defined by the CLRA in California Civil

1  Code section 1761(c).

2    62.    PLAINTIFF and the members of the California Class are "consumers,"

3  as defined by the CLRA in California Civil Code section 1761(d).

4    63.    Purchase of the Products by PLAINTIFF and the members of the

5  California Class are "transactions," as defined by the CLRA in California Civil Code

6  section 1761(e).

7    64.    As alleged above, DEFENDANT has violated California Civil Code

8  sections 1770(a)(5), (a)(7), (a)(9), and (a)(16) by making false representations on the

9  Product packaging and in marketing (as detailed herein) that the Products are

10  "natural," when in fact they contain synthetic and/or highly processed ingredients,

11  which are not natural.

12    65.    DEFENDANT violated Section 1770(a)(5) by representing that the

13  Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in

14  that the Products are falsely labeled and advertised, as described herein.

15  DEFENDANT knew that consumers will often pay more for products that are natural

16  and has unfairly profited from the false and misleading representations.

17    66.    Similarly, DEFENDANT violated section 1770(a)(7) by representing

18  that the Products "are of a particular standard, quality, or grade . . . if they are of

19  another" by falsely and deceptively labeling and advertising the Products as described

20  herein.

21    67.    In addition, DEFENDANT violated section 1770(a)(9) by advertising

22  the Products "with intent not to sell them as advertised" in that the Products are falsely

23  labeled and advertised as described herein.

24    68.    In addition, DEFENDANT violated section 1770(a)(16) by representing

25  that the subject of a transaction has been supplied in accordance with a previous

26  representation when it has not, as described herein.

27    69.    DEFENDANT's uniform and material representations and omissions

28  regarding the Products were likely to deceive, and DEFENDANT knew or should

1  have known that its representations and omissions were untrue and misleading.

2      70.    PLAINTIFF and the members of the California Class could not have

3  reasonably avoided such injury. PLAINTIFF and the members of the California Class

4  were unaware of the existence of the facts that DEFENDANT suppressed and failed

5  to disclose, and PLAINTIFF and the members of the California Class would not have

6  purchased the Products, or would have only purchased them for a lower price, had

7  they known the truth.

8      71.    PLAINTIFF and the members of the California Class have been directly

9  and proximately injured by DEFENDANT's conduct. Such injury includes, but is not

10  limited to, the purchase price of the Products and/or the portion of the price paid for

11  the misrepresented attributes of the Products.

12      72.    Given that DEFENDANT's conduct violated section 1770(a),

13  PLAINTIFF and the members of the California Class are entitled to seek and do seek

14  injunctive relief to put an end to DEFENDANT's violations of the CLRA.

15      73.    Moreover, DEFENDANT's conduct is malicious, fraudulent, and

16  wanton in that DEFENDANT intentionally misled and withheld material information

17  from consumers to increase the sales of the Products.

18      74.    Pursuant to California Civil Code section 1782, PLAINTIFF, on

19  PLAINTIFF's behalf and on behalf of the members of the California Class, notified

20  DEFENDANT of its violations of the CLRA on June 27, 2022. DEFENDANT did

21  not correct its false and misleading "natural" claims and did not compensate

22  PLAINTIFF and the California Class members for their financial injuries within 30

23  days of PLAINTIFF's notice. Consequently, PLAINTIFF seeks damages, including

24  but not limited to actual damages and punitive damages, pursuant to the CLRA, in

25  addition to equitable and injunctive relief, and requests that this Court enter such

26  orders or judgments as may be necessary to restore to any person in interest any

27  money that may have been acquired in violation of the CLRA, and for such other

28  relief as is provided under California Civil Code section 1780.

75.    PLAINTIFF further requests that the Court enjoin DEFENDANT from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise require DEFENDANT to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through DEFENDANT's false representations.

### THIRD CAUSE OF ACTION

**Violation of the California False Advertising Law**

**(Brought on Behalf of Plaintiff and the California Class)**

76.    PLAINTIFF realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

77.    PLAINTIFF brings this claim individually and on behalf of the California Class for violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

78.    California Business and Professions Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

79.    The FAL makes it unlawful for a person, firm, corporation, or association to induce the public to buy its products by knowingly disseminating untrue or misleading statements about the products.

80.    DEFENDANT's labeling and advertising include untrue and misleading statements that the Products are "natural." These representations were likely to deceive a reasonable consumer. If consumers knew the true facts regarding the Products' synthetic and unnatural ingredients, as detailed above, they would not have purchased the Products. DEFENDANT knew, or reasonably should have known, that its representations concerning the Products are untrue and misleading, since it knows how the Products and their ingredients are manufactured. DEFENDANT made the representations at issue with the intent to induce PLAINTIFF and the California Class members to purchase the Products. PLAINTIFF and the California Class members purchased the Products in reliance on the untrue and misleading representations by

1  DEFENDANT.

2      81.    PLAINTIFF and the members of the California Class have been directly

3  and proximately injured by DEFENDANT's conduct in ways including, but not

4  limited to, the monies paid to DEFENDANT for the Products that lacked the

5  characteristics advertised, interest lost on those monies, and consumers' unwitting

6  support of a business enterprise that promotes deception and undue greed to the

7  detriment of consumers, such as PLAINTIFF and the California Class members.

8      82.    As a direct and proximate result of DEFENDANT's unlawful conduct in

9  violation of section 17500, PLAINTIFF and the members of the California Class,

10  pursuant to section 17535, are entitled to seek and do seek an order of this Court

11  enjoining such future wrongful conduct on the part of DEFENDANT and requiring

12  DEFENDANT to disclose the true nature of its misrepresentations. PLAINTIFF has

13  no adequate remedy at law. Without equitable relief, DEFENDANT's unfair,

14  deceptive, untrue, and misleading practices will continue to harm PLAINTIFF and

15  the California Class.

16      83.    As a direct and proximate result of DEFENDANT's unlawful conduct in

17  violation of section 17500, PLAINTIFF and the members of the California Class were

18  harmed and suffered financial losses in a dollar amount to be proven at the time of

19  trial that PLAINTIFF and the California Class members paid for the misrepresented

20  attributes of the Products, up to and including the full purchase price of the Products.

21  PLAINTIFF seeks an award under the FAL of damages, restitution, and/or

22  disgorgement of this dollar amount for PLAINTIFF's and the California Class

23  members' purchases of the Products.

24                    **FOURTH CAUSE OF ACTION**

25            **Violation of the California Unfair Competition Law**

26          **(Brought on Behalf of Plaintiff and the California Class)**

27      84.    PLAINTIFF realleges and incorporates by reference all allegations

28  contained in this complaint, as though fully set forth herein.

85.     The California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.

86.     DEFENDANT's conduct is unlawful because it violates the CLRA and the FAL, as well as California Health & Safety Code section 110660, which states: "Any food is misbranded if its labeling is false or misleading in any particular."

87.     DEFENDANT's conduct is fraudulent because, as alleged above, DEFENDANT's representations concerning the Products were false and misleading, as the Products are not "natural" as they contain synthetic or non-natural ingredients, and PLAINTIFF and the California Class members relied on those representations in purchasing the Products.

88.     PLAINTIFF and the California Class members have suffered injury in fact and lost money as a result of DEFENDANT's conduct, since they purchased the Products in reliance on DEFENDANT's misrepresentations and would not have purchased the Products if they had known the true facts about the Products.

89.     Pursuant to California Business and Professions Code section 17203, PLAINTIFF and the California Class members seek restitution of the purchase price paid for the Products, plus an injunction barring DEFENDANT from continuing these deceptive advertising practices.

### FIFTH CAUSE OF ACTION

**Breach of Express Warranty**

**(Brought on Behalf of Plaintiff and the Multi-State Class)**

90.     PLAINTIFF realleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

91.     PLAINTIFF and the Multi-State Class members formed a contract with DEFENDANT at the time they purchased the Products. As part of that contract, DEFENDANT represented that the Products were "natural," as described above. These representations constitute express warranties and became part of the basis of the bargain between PLAINTIFF and the Multi-State Class members, on the one

1 | hand, and DEFENDANT, on the other.

2 |     92.    DEFENDANT made the above-described representations to induce

3 | PLAINTIFF and the Multi-State Class members to purchase the Products, and

4 | PLAINTIFF and the Multi-State Class members relied on the representations in

5 | purchasing the Products.

6 |     93.    All conditions precedent to DEFENDANT's liability under the above-

7 | referenced contract have been performed by PLAINTIFF and the other Multi-State

8 | Class members. DEFENDANT breached its express warranties about the Products

9 | because, as alleged above, the Products are not "natural." DEFENDANT violated the

10 | following state warranty laws:

11 |          A.     Alaska Stat. section 45.02.313;

12 |          B.     A.R.S. section 47-2313;

13 |          C.     A.C.A. section 4-2-313;

14 |          D.     Cal. Com. Code section 2313;

15 |          E.     Colo. Rev. Stat. section 4-2-313;

16 |          F.     Conn. Gen. Stat. section 42a-2-313;

17 |          G.     6 Del. C. section 2-313;

18 |          H.     D.C. Code section 28:2-313;

19 |          I.     O.C.G.A. section 11-2-313;

20 |          J.     HRS section 490:2-313;

21 |          K.     Idaho Code section 28-2-313;

22 |          L.     810 ILCS 5/2-313;

23 |          M.     Ind. Code section 26-1-2-313;

24 |          N.     K.S.A. section 84-2-313;

25 |          O.     KRS section 355.2-313;

26 |          P.     11 M.R.S. section 2-313;

27 |          Q.     Mass. Gen. Laws Ann. ch. 106 section 2-313;

28 |          R.     Minn. Stat. section 336.2-313;

| | | |
|---|---|---|
| S. | Miss. Code Ann. section 75-2-313; |
| T. | R.S. Mo. Section 400.2-313; |
| U. | Mont. Code Anno. Section 30-2-313; |
| V. | Neb. Rev. Stat. section 2-313; |
| W. | Nev. Rev. Stat. Ann. section 104.2313; |
| X. | RSA 382-A:2-313; |
| Y. | N.J. Stat. Ann. section 12A:2-313; |
| Z. | N.M. Stat. Ann. section 55-2-313; |
| AA. | N.Y. U.C.C. Law section 2-313; |
| BB. | N.C. Gen. Stat. section 25-2-313; |
| CC. | N.D. Cent. Code section 41-02-30; |
| DD. | ORC Ann. section 1302.26; |
| EE. | 12A Okl. St. section 2-313; |
| FF. | Or. Rev. Stat. section 72-3130; |
| GG. | 13 Pa.C.S. section 2313; |
| HH. | R.I. Gen. Laws section 6A-2-313; |
| II. | S.C. Code Ann. section 36-2-313; |
| JJ. | S.D. Codified Laws, section 57A-2-313; |
| KK. | Tenn. Code Ann. section 47-2-313; |
| LL. | Tex. Bus. & Com. Code section 2.313; |
| MM. | Utah Code Ann. section 70A-2-313; |
| NN. | 9A V.S.A. section 2-313; |
| OO. | Va. Code Ann. section 59.1-504.2; |
| PP. | Wash. Rev. Code Ann. section 62A.2-313; |
| QQ. | W. Va. Code section 46-2-313; |
| RR. | Wyo. Stat. section 34.1-2-313. |

94.   As a result of DEFENDANT's breaches of express warranty, PLAINTIFF and the other members of the Multi-State Class were damaged in the

amount of the purchase price they paid for the Products, or in the amount of the price premium they paid on account of DEFENDANT's deceptive "natural" representations, in amounts to be proven at trial.

95.    Within a reasonable time after he knew or should have known of such breach, on June 27, 2022, PLAINTIFF, on behalf of himself and the other members of the Multi-State Class, placed DEFENDANT on notice thereof.

## SIXTH CAUSE OF ACTION

### Unjust Enrichment

### (Brought on Behalf of the Plaintiff, the Nationwide Class, and California Class)

96.    PLAINTIFF realleges and incorporates by reference all allegations contained in the complaint, as though fully set forth herein.

97.    PLAINTIFF brings this claim for unjust enrichment individually and on behalf of the Nationwide Class and the California Class.

98.    By purchasing the Products, PLAINTIFF and the members of the California Class and the Nationwide Class conferred a benefit on DEFENDANT in the form of the purchase price of the Products.

99.    DEFENDANT had knowledge of such benefit. DEFENDANT appreciated the benefit because, were consumers not to purchase the Products, DEFENDANT would not generate revenue from the sales of the Products.

100.    DEFENDANT's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by DEFENDANT's fraudulent and misleading representations and omissions, as detailed herein.

101.    Equity cannot in good conscience permit DEFENDANT to be economically enriched from such actions at the expense of PLAINTIFF and the members of the California Class and the Nationwide Class. Accordingly, PLAINTIFF seeks an award pursuant to this cause of action for unjust enrichment of restitution and/or disgorgement of ill-gotten gains in the amount of the purchase price for the Products (or, in the alternative, in the amount of the price premium paid on account

of DEFENDANT's deceptive "natural" representations), as well as injunctive relief to prevent ongoing and future harm that will result from the ongoing false representations that the Products are "natural" when in fact, they are not.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF, individually and on behalf of all others similarly situated, prays for judgment against DEFENDANT as follows:

1. For an order certifying the Classes under Federal Rule of Civil Procedure 23 as set forth above;

2. For an order declaring that DEFENDANT is financially responsible for notifying the Class members of the pendency of this suit;

3. For an order enjoining DEFENDANT from continuing the unlawful practices set forth above;

4. For an order declaring that DEFENDANT's conduct violates the statutes and laws referenced herein;

5. For an order requiring DEFENDANT to disgorge and make restitution of all monies DEFENDANT acquired by means of the unlawful practices set forth above;

6. For compensatory, incidental, or consequential damages according to proof;

7. For punitive or exemplary damages according to proof;

8. For reasonable attorney's fees and costs of suit;

9. For pre-judgement and post-judgment interest to the extent the law allows; and

10. For such other relief as the Court deems just and proper.

/ / /

/ / /

/ / /

## **<u>DEMAND FOR JURY TRIAL</u>**

PLAINTIFF demands a trial by jury on all claims so triable.

Dated: August 18, 2022                    **CROSNER LEGAL, PC**


By:  *// s// -Chad Saunders*
                                                          Michael R. Crosner, Esq.
                                                          Zachary M. Crosner, Esq.
                                                          Blake R. Jones, Esq.
                                                          Chad Saunders, Esq.

**REESE LLP**
Michael R. Reese
George V. Granade


Attorneys for Plaintiff BENJAMIN ADLER
and the Proposed Class

---